**CHAMBERS v. MOORE McCORMACK LINES, Inc.**

**No. 10074.**

United States Court of Appeals
Third Circuit.

Argued Feb. 20, 1950.

Filed June 12, 1950.

William M. Alper, Philadelphia, Pa., for appellant.

Robert W. Bikle, Philadelphia, Pa., for appellee.

Before BIGGS, Chief Judge, and GOODRICH and HASTIE, Circuit Judges.

BIGGS, Chief Judge.

This case is a libel in admiralty by Lyle T. Chambers, an American seaman, for double wages on account of alleged wrongful withholding of wages by his employers, Moore McCormack Lines, Inc. (Moore McCormack). Chambers bases his claim upon that statute which provides that a master or owner who refuses or neglects to pay a seaman his earned wages within a specific period "without sufficient cause" shall pay the seaman two days pay for every day of delay. R.S. § 4529, as amended, 46 U.S.C.A. § 596.[1]

Findings of Fact, based on ample evidence, disclose the following sequence of events. Chambers joined the Steamship "Mark Hanna", a vessel operated by Moore McCormack, on May 12, 1947 in the capacity of chief engineer at a pay rate of $514 per month. While the vessel was on the high seas to Norway, Chambers showed to the master of the vessel a large quantity of nylons, lingerie and cosmetics which he had in his possession. The vessel first stopped at Oslo, Norway. After the ship left Norway the master issued a written order directing the department heads of the Mark Hanna to search the various areas of the ship under their direction for goods subject to the Danish customs laws. It was Chambers' duty to inspect that part of the ship in which the dutiable goods for which the ship was fined were later found. The order also specifically directed Chambers to declare the articles he had displayed to the master. Chambers declared only ten packs of cigarettes and did not mention the other articles in his declaration.

The Mark Hanna then entered the port of Copenhagen. There on June 19, 1947 Danish customs authorities in searching the ship found a large quantity of tobacco products together with nylon, lingerie and cosmetics. All these were discovered in a void space tank in the engine room. The nylons and other articles, not including the tobacco, were of the "same brand" and bore the "same marks" as those displayed to the master previously by Chambers. The articles other than the tobacco were removed from the ship for transportation to the United States. A $415 fine was imposed against the ship on account of the tobacco. After the removal of all the dutiable articles found in the tank Chambers advised the master that he would personally pay the fine assessed against

1. The pertinent part of the statute is as follows: "The master or owner of any vessel making coasting voyages shall pay to every seaman his wages within two days after the termination of the agreement under which he was shipped, or at the time such seaman is discharged, whichever first happens; and in case of vessels making foreign voyages, or from a port on the Atlantic to a port on the Pacific, or vice versa, within twenty-four hours after the cargo has been discharged, or within four days after the seaman has been discharged, whichever first happens; and in all cases the seaman shall be entitled to be paid at the time of his discharge on account of wages a sum equal to one-third part of the balance due him. Every master or owner who refuses or neglects to make payment in the manner hereinbefore mentioned without sufficient cause shall pay to the seaman a sum equal to two days' pay for each and every day during which payment is delayed beyond the respective periods, which sum shall be recoverable as wages in any claim made before the courts; * * *."

the ship if the goods were turned over to him. On July 28, 1947, after an investigation the master of the vessel logged Chambers with the fine and $415 was withheld from his pay at the termination of the voyage on or about August 19, 1947. There can be no doubt but that Chambers was guilty of smuggling. This libel for penalties was filed February 18, 1948. In order to terminate the running of penalties in case the decision was in favor of Chambers, Moore McCormack paid Chambers $415 on March 18, 1948.

■ The court below dismissed the libel holding in effect that there was no withholding of wages without sufficient cause which could justify the imposition of penalties. D. C., 84 F.Supp. 1009. The withholding seems clearly justified under the circumstances. The decision of the court below must be affirmed.

It is urged by Chambers that R.S. § 4596, as amended, 46 U.S.C.A. § 701, casts light upon the meaning of the phrase "without sufficient cause" as the phrase is applied to withholding of wages in R.S. § 4529 amended, supra. R.S. § 4596, as amended, provides that: "Whenever any seaman who has been lawfully engaged * * * commits any of the following offenses, he shall be punished as follows: * * *." There follows an enumeration of eight offenses and the punishments a seaman may receive for each. The only item which might apply to the conduct of Chambers is: "* * * Eighth. For any act of smuggling *for which he is convicted*[2] and whereby loss or damage is occasioned to the master or owner, he shall be liable to pay such master or owner such sum as is sufficient to reimburse the master or owner for such loss or damage, and the whole or any part of his wages may be retained in satisfaction or on account of such liability, and he shall be liable to imprisonment for a period of not more than twelve months. * * *"

Chambers argues that R.S. § 4596, as amended, lists the only sufficient causes for withholding wages on account of smuggling;[3] that wages could not be withheld under the above quoted statute because he was never actually convicted of smuggling; and that, therefore, his wages were withheld "without sufficient cause" within the meaning of R.S. § 4529, as amended.[4] The answer to this argument is that R.S. § 4596, captioned "Various offenses; penalties", does not list all of the causes sufficient to warrant the withholding of wages. The mere fact that wages may be withheld for eight offenses listed in R.S. § 4596 does not demonstrate that any other withholding is "without sufficient cause". In Collie v. Fergusson, 281 U.S. 52, 56, 50 S.Ct. 189, 191, 74 L.Ed. 696, Mr. Justice Stone stated that "* * * the liability is not incurred where the refusal to pay is in some reasonable degree morally justified * * *." See Oldfield v. The Arthur P. Fairfield, 9 Cir., 176 F.2d 429, certiorari denied 338 U.S. 879, 70 S.Ct. 158.

The facts of the cited case are strikingly similar to the case at bar. The court held that the seaman could not recover the withheld wages since it was clear that he was responsible for the customs fine against the ship even though he had not been convicted of any crime. In the Oldfield case the seaman was seeking to recover withheld wages only and was not seeking a penalty. The equities in the instant case are less favorable to the seaman since Chambers seeks a penalty. Cf. Johnson v. Isbrandsten Company, Inc., D.C.Pa., —— F.Supp. ——.[5] In the Johnson case the withholding of the seaman's wages was held to be unauthorized and the libellant recovered the wages withheld but the court refused to permit the imposition of a penalty.

Chambers insists that the opinion of Judge Augustus N. Hand in Shilman v. United States, 2 Cir., 164 F.2d 649, certiorari denied 333 U.S. 837, 68 S.Ct. 608, 92 L.

2. Emphasis added throughout the opinion.

3. There are other statutes permitting withholding of wages for other specific causes. These are not pertinent here.

4. Quoted in footnote 1, supra.

5. Decided May 19, 1950.

Ed. 1122, requires a different result. The Shilman case is distinguishable from that at bar since it involves an action for wages without penalties. In the cited case Judge Hand pointed out that deductions from wages are made "for a smuggling of goods which subjected the vessel to jeopardy". See Id., 164 F.2d at page 652; and Glandzis v. Callinicos, 2 Cir., 140 F.2d 111, 115 and the cases there cited.

It is urged by Chambers that the underlying policy of the statutes is the protection of a seaman's right to wages earned by him. He asserts that a failure to impose the penalty here sought would mark a return to the once wide-spread practice of unjustified and arbitrary withholding of seaman's wages. The argument is without merit.

The decision of the court below will be affirmed.