**Antonios VENTIADIS, Plaintiff,**

v.

**C. J. THIBODEAUX & COMPANY and Panama-Florida Shipping Lines, Inc., Defendants.**

**Civ. A. No. 66–H–831.**

United States District Court
S. D. Texas,
Houston Division.

Dec. 13, 1968.

---

Mandell & Wright, Arthur J. Mandell, Houston, Tex., for plaintiff.

Eastham, Watson, Dale & Forney, Jon W. Montague, and Fulbright, Crooker, Freeman, Bates & Jaworski, Owen W. Cecil, Houston, Tex., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

INGRAHAM, District Judge.

This action was instituted by plaintiff, Antonios Ventiadis, against C. J. Thibodeaux & Company and Panama-Florida Shipping Lines, Inc. for damages for personal injuries under the Jones Act and for earned wages and penalties under 46 U.S.C. Sec. 596. The personal injury action having been settled, plaintiff's claim for wages and penalties was heard by the court sitting without a jury on March 4 and September 10, 1968. Having heard the evidence and considered the briefs of counsel, the court finds facts and states conclusions of law pursuant to Fed.R.Civ. P. 52 as follows:

### FINDINGS OF FACT

1. On March 27, 1964, plaintiff, a Greek citizen, signed a contract of employment written in the Greek language, for service aboard the S. S. DANIEL

PIERCE as third engineer. The contract was signed in Piraeus, Greece, and specified in pertinent part that repatriation expenses were to be borne by the owner only after 18 months of service, and that special terms provided by the G.C.A. (Greek Collective Agreement) were applicable. (Pl.'s Exhibit 1). Under the G.C.A., contract disputes were to be litigated in Greek courts applying Greek law. (Def.'s Exhibit 2). The employment arrangements were handled by the agency of Lycoudi Brothers of Piraeus, Greece, through C. J. Thibodeaux & Company for Panama-Florida Shipping Lines, Inc.

2. Although the contract which plaintiff signed indicated that C. J. Thibodeaux & Company was the owner of the vessel, the true owner of the DANIEL PIERCE was Panama-Florida Shipping Lines, Inc.

3. C. J. Thibodeaux & Company was the United States General Agent for Panama-Florida, and never knowingly held itself out to be the owner of the DANIEL PIERCE. The court finds that plaintiff did not rely to his detriment on the mistaken impression that C. J. Thibodeaux & Company was the owner of the vessel; C. J. Thibodeaux & Company is not estopped to deny that it was not the owner. C. J. Thibodeaux & Company will not be liable for any wages or penalties to the plaintiff. The principal Panama-Florida Shipping Lines, Inc. will be solely liable if any payments are hereafter determined to be due the plaintiff.

4. The DANIEL PIERCE flew the flag of Panama, and its owner, Panama-Florida Shipping Lines, Inc., was incorporated under the laws of the Republic of Panama.

5. Fifty percent of the stock in Panama-Florida was owned by Thibodeaux, Inc., a United States corporation. The entire stock of Thibodeaux, Inc. was owned by defendant C. J. Thibodeaux & Company. The other fifty percent of the stock in Panama-Florida was owned by William Brooks, a citizen of the United States. The court finds that United States citizens were the beneficial owners of the DANIEL PIERCE.

6. Approximately ten to fifteen days after plaintiff signed the contract of employment, he was flown, at the ship-owner's expense, to Houston, Texas. The day following his arrival in Houston, he joined the vessel in Galveston, Texas, and thence proceeded to Georgetown, British Guiana, and back to the United States. Several other trips, each of approximately one month's duration, from a United States port to a port in the Caribbean followed.

7. Due to a minor burn sustained aboard ship, and more importantly, to a stomach ailment, plaintiff signed off the ship on June 30, 1964, while the vessel was in port in Trinidad. A statement of account which indicated that he was due $301.50 in wages and overtime was prepared (Def.'s Exhibit 4), and plaintiff requested payment. He was instructed to sign the statement, which constituted a release, and to take it to the local agent for payment. Unknown to the plaintiff, the ship's master included a letter (Pl.'s Exhibit 3) addressed to the agent, informing them that since plaintiff had left the ship at his own request, he had breached his contract. The master instructed the agent to deduct any repatriation expenses from the amount due.

8. Plaintiff did not receive any of the wages due him, but was flown at company expense to Greece. He was employed and/or resided in Greece until approximately November of 1966, when he moved to New York. The present suit was filed soon thereafter.

9. Plaintiff reported the non-payment of his wages to the Greek and Panamanian Consulates in Trinidad soon after he was discharged from the ship (Pl.'s Exhibit 4, p. 42). He never personally wrote to the shipowner demanding payment (Id. at 40). There is evidence, however, that plaintiff made demand through an attorney both in 1964 and in 1966. The court finds that although plaintiff was not diligent in fil-

ing suit, the defendant was on notice of his claim.

## CONCLUSIONS OF LAW

1. The court has discretion to accept or decline jurisdiction over a controversy between foreigners. Because the beneficial ownership of the vessel was vested in United States citizens, the vessel was regularly engaged in shipping to and from United States ports, the plaintiff signed on the ship in the United States, the plaintiff is now a United States resident making the courts of Greece inconvenient, and despite the fact that the contract provided that any disputes were to be litigated in Greek courts applying Greek law, the court accepts jurisdiction. Anastasiadis v. S. S. Little John, 346 F.2d 281 (5 CA 1965) cert. denied, 384 U.S. 920, 86 S.Ct. 1368, 16 L.Ed.2d 440 (1966).

2. Section 596, Title 46, U.S. C., relating to penalty wages, is applicable. Section 596 applies to foreign seamen serving on foreign vessels. Caribbean Federation Lines v. Dahl, 315 F.2d 370 (5 CA), cert. denied, 375 U.S. 831, 84 S.Ct. 76, 11 L.Ed.2d 62 (1963); The Fletero v. Arias, 206 F.2d 267 (4 CA), cert. denied, 346 U.S. 897, 74 S.Ct. 220, 98 L. Ed. 398 (1953). The fact that plaintiff was not discharged in a United States port does not render the section inapplicable. Plaintiff signed on in an American port and the vessel made regular voyages to and from American ports. To limit Section 596 only to instances in which the seaman is discharged in an American port would be to unreasonably restrict its effect. In addition, since the beneficial ownership of the ship was in United States citizens, the suit is between foreigners only technically.

3. The deduction of the cost of repatriation from plaintiff's wages was improper, considering the limited statutory instances in which a deduction of wages is proper. 46 U.S.C. Sec. 701; Isbrandtsen Co., Inc. v. Johnson, 343 U.S. 779, 72 S.Ct. 1011, 96 L.Ed. 1294 (1952); Schwark v. S.S. Rio Macareo, 249 F.Supp. 375 (E.D.La.1966).

4. The deduction was "without sufficient cause" within the meaning of 46 U.S.C. Sec. 596. Collie v. Fergusson, 281 U.S. 52, 50 S.Ct. 189, 74 L.Ed. 696 (1930); 1 Norris, Law of Seamen, Sec. 384 (1962). A penalty of double wages is therefore in order.

5. "The time for which the penalty provision runs rests within the sound discretion of the court and depends upon the equities of the case." Caribbean Federation Lines v. Dahl, 315 F.2d 370 (5 CA 1963), affirming Dahl v. The S.S. Amigo, 202 F.Supp. 890 (S. D.Ala.1962), cert. denied, 375 U.S. 831, 84 S.Ct. 76, 11 L.Ed.2d 62 (1963).

6. Plaintiff is required to exercise diligence in the pursuit of his claim to be entitled to the double wage penalty. Dahl v. The S.S. Amigo, id. at 894 and cases there cited.

7. Suit was not filed until over two years after the cause of action accrued. Balancing the equities, the court believes that with due diligence the case could have been filed and the trial held much earlier. Double wages for the four year period since June 30, 1964, are not in order.

8. Had plaintiff filed and pursued his wage claim with diligence, it is probable that the trial of the cause could have been held within ten months after suit was filed. That length of time is the median time interval from issue to trial for non-jury cases in the Southern District of Texas. Administrative Office of the United States Courts Annual Report of the Director II–21 (1968).

9. Plaintiff is therefore entitled to $301.50 at six percent interest from June 30, 1964, to date of judgment, plus double wages for 300 days ($7.50 x 2 x 300 days = $4,500), from defendant Panama-Florida Shipping Lines, Inc.

10. Any finding of fact which is deemed to be a conclusion of law is hereby adopted as a conclusion of law.