James C. DAVENPORT

v.

ALBATROSS TANKER CORP.

Civ. A. No. 69–1542.

United States District Court,
E. D. Pennsylvania.

Sept. 28, 1972.

Sidney J. Smolinsky, Pechner, Sacks, Dorfman, Rosen & Richardson, Philadelphia, Pa., for plaintiff.

Robert W. Costigan, Costigan & Garber, Kenneth N. Garber, Robert M. Rubin, Philadelphia, Pa., for defendant.

## MEMORANDUM OPINION AND ORDER

VanARTSDALEN, District Judge.

The plaintiff, a seaman, claims "double penalty wages" from March 16, 1969, to date, pursuant to Title 46 U.S.C.A. § 596.[1] The shipowner deducted six days' pay from the seaman's wages at the time the seaman received his final pay. The deduction was a forfeiture which the shipowner asserts was properly logged and deducted. Plaintiff contends that (1) he was guilty of no conduct that justified the pay deduction insofar as the log book and admissions of record disclose, and (2) a seaman's pay forfeiture may be enforced only through district court action. The parties have submitted the case on the question of liability, to the court, on an agreed stip-

1. The complaint also claimed for maintenance and cure and unearned wages for a period of disability, but that portion of the claim was abandoned by the plaintiff.

ulation of facts and the admissions in the pleadings, which shall, for purposes of this decision, be deemed as the court's findings of fact.

The plaintiff signed articles of foreign shipment aboard the SS "Erna Elizabeth" as an oiler. His regular watch for which he signed on was from midnight to 4:00 a. m. and noon to 4:00 p. m. each day.

Charges were preferred against the plaintiff by the chief engineer and witnessed by the 1st assistant engineer. The following entries appear in the logbook.

Sattahip, Thailand: 3/12/69—Failed to report and to stand his prescribed 0800 to 1200 & 2000 to 2400 hrs. watch.

At sea Departing Port of Sattahip 3/13/69 Left Engine Room to call the watch and failed to return without proper relief at 1100 hrs.

At sea: 3/14/69: Failed to stand his prescribed 0800 to 1200 and 2000 to 2400 hrs. watch due to intoxication.

This man's quarters searched by Master, Chief Mate and Chief Engineer and First Assistant. At 2030 hrs. on 3/13/69, entered in official logbook. Seaman's reply: "I cannot see any point in making a comment at present."

The above constitutes a petition of similar offenses and a continuous disregard in the performance of his duties as indicated by previous logs.

Action Taken: Fined six days' pay at $14.58 per day amounting to total of $87.48.

/s/ Master

/s/ Chief Mate.

The log entries were read to the plaintiff and he was furnished a copy of them on March 16, 1969, while the ship was still at sea. On May 26, 1969, when plaintiff left the ship, he received his full pay, less the six days' pay of $87.48 which was deducted. No portion of the amount presently claimed by plaintiff was ever paid to him or paid into any court.

Title 46 U.S.C.A. § 596 provides that if the master of the ship refuses or neglects, without sufficient cause, to pay a seaman in full the amount of wages to which he is entitled, the seaman shall be entitled to two days' pay for each day's delay in payment. The sole question is whether the deduction from the seaman's pay was proper both substantively and procedurally.

Isbrandtsen v. Johnson, 343 U.S. 779, 72 S.Ct. 1011, 96 L.Ed. 1294 (1952), clearly held that there can be no forfeiture or deduction of pay due a seaman in the absence of express statutory authorization. The offenses for which a seaman may be subjected to ship's punishment and, under certain circumstances to a forfeiture of pay are enumerated in Title 46 U.S.C.A. § 701. Defendant contends that the forfeitures were justified under either or both the Fourth and Fifth subsections of Section 701, which provide as follows:

Fourth. For willful disobedience to any lawful command at sea, by being, at the option of the master, placed in irons until such disobedience shall cease, and upon arrival in port by forfeiture from his wages of not more than four days' pay, or, at the discretion of the court, by imprisonment for not more than one month.

Fifth. For continued willful disobedience to lawful command or continued willful neglect of duty at sea, by being, at the option of the master, placed in irons, on bread and water, with full rations every fifth day, until such disobedience shall cease, and upon arrival in port by forfeiture, for every twenty-four hours' continuance of such disobedience or neglect, of a sum of not more than twelve days' pay, or by imprisonment for not more than three months, at the discretion of the court.

If guilty of willful disobedience to a lawful command at sea, the seaman could be subject to a forfeiture up to four days' pay for each occurrence. If there was either a continued willful disobedience to any command or a continued

willful neglect of duty at sea, the seaman could be subject to a forfeiture up to twelve days' pay for each twenty-four hour period of such continuous conduct.

The logbook entries, although possibly not written with legalistic precision, do show clearly the following failures of plaintiff to perform his duties:

1. On March 12, 1969, he failed to stand two duty watches.[2]

2. On March 13, 1969, he left his duty watch without obtaining a relief to stand the watch.

3. On March 14, 1969 he failed to stand two duty watches due to intoxication.

The last entry then contains a notation that "the above constitutes a repetition of similar offenses and a continuous disregard in the performance of his duties as indicated by previous logs."

■ Although I agree with plaintiff's contention that inferences should be drawn in favor of the plaintiff, since the purpose of Section 701 as well as other shipping legislation is to protect the seaman, I do not believe Congress ever intended to prohibit a shipowner from deducting pay, within the limits specified in the act, from a seaman who fails to stand two duty watches on one day (possibly in port), on the following day leaves his duty watch at sea and fails to return or to get a relief seaman, and on the third succeeding day fails to stand two prescribed watches due to intoxication. To provide that under such circumstances a seaman is entitled to his full pay without deduction or forfeiture would subvert the purpose of the legislation. Failures of duty at sea, such as leaving a duty watch or failing to stand a watch can seriously jeopardize the safety of the entire crew, cargo and ship. Reasonable methods of enforcing discipline are essential, and are set forth in

the statute. One important method of discipline is by pay forfeiture, which appears to be the least harsh of permissible forms of punishment.

The logbook establishes a course of conduct that as of March 14, 1969 constituted a "continued willful neglect of duty at sea" of at least twenty-four hours' duration. For such offense a forfeiture of not more than twelve days' pay could be imposed.

■ The forfeiture may also be justified on the basis of willful disobedience of lawful commands at sea, two of which occurred on March 14, 1969. Plaintiff contends that there must be proof of a direct refusal to obey a direct oral command. *Isbrandtsen, supra,* indicates that a mere breach of shipboard discipline does not constitute a willful disobedience of a lawful command at sea under subsection Fourth of Section 701. Shipboard fighting between seamen, in the absence of a direct order not to do so, likewise would be insufficient to press charges under subsection Fourth. Roeder v. Alcoa Steamship Co., 422 F.2d 971 (3rd Cir. 1970). I find these cases distinguishable from a failure to stand a "prescribed" watch due to intoxication. The extreme of plaintiff's position would be that if a seaman drank himself unconscious, he could never be commanded to stand watch, and hence could not be guilty of disobeying a lawful command, regardless of how or when he was previously notified of his duty watch.

■ Wilfulness is sufficiently established from the log entry and admission of record that plaintiff did not stand the watches and that he was intoxicated. Intoxication as generally meant, and as obviously intended by the log entry, is caused by voluntary consumption of excessive amounts of alcoholic beverage. Although theoretically possible to be in-

---

2. Plaintiff contends that this log entry entitled "Sattahip Thailand" and the next day's log entry "At sea departing port of Sattahip" establishes that the ship was in port on March 12, 1969; and, therefore, neither subsections Fourth

or Fifth of Section 701 could apply, as they refer only to offenses occurring "at sea." For reasons hereafter set forth, this issue need not be decided, as it is not essential to the decision.

voluntarily intoxicated (for example, unknowingly drinking an alcoholic liquid or from direct coercion), such far-fetched possibilities certainly need not be negated by the log entry. Although intoxication can be relevant on the issue of specific intent, in criminal law drunkenness is not an excuse for crime, nor is a voluntarily intoxicated person absolved of criminal responsibility for crime in general under applicable law. Easter v. District of Columbia, 124 U.S. App.D.C. 33, 361 F.2d 50 (1966); Heideman v. United States, 104 U.S.App.D.C. 128, 259 F.2d 943 (1958).

The stipulated facts show that plaintiff's regular watches were from midnight to 4:00 a. m. and noon to 4:00 p. m., whereas the missed watches were from 8:00 a. m. to noon and 8:00 p. m. to midnight. Plaintiff suggests that the missed watches may have been overtime which he would not be required to stand, although plaintiff's brief says plaintiff has not grounded his claim on this. Whatever the reason for the discrepancy, the log entry that the watches which plaintiff missed were "prescribed" watches makes it clear that they were regular duty watches that plaintiff had been instructed to stand.

I conclude, therefore, that the record clearly establishes a "continued willful neglect of duty at sea" as of March 14, 1969, and that the statement in the logbook that "the above constitutes . . . a continuous disregard in the performance of his duties" sufficiently indicates that the penalties imposed against the plaintiff were pursuant to Title 46 U.S. C.A. § 701, "Fifth." Although not necessary to this decision, it is also apparent that plaintiff willfully disobeyed lawful commands on March 12, 1969; March 13, 1969; and March 14, 1969. (Although those on March 12, 1969, may have been in port rather than "at sea.")

■ The second major contention of plaintiff is that the law allows a forfeiture of pay only by a district court, and that a forfeiture may not be imposed by a master of the ship. Plaintiff cites no case law so holding, and concedes that the practice among the shipping industry has historically been to the contrary. Plaintiff bases his argument on the wording of the statute which, as to subsections "Fourth" and "Fifth," reads in pertinent parts that for a violation, the seaman may at the option of the master be placed in irons until the disobedience ceases and, upon arrival in port by forfeiture of pay or by imprisonment, "at the discretion of the court."

Isbrandtsen Co. v. Johnson, *supra*, 343 U.S. at pages 784, 785–786, 72 S.Ct. at pages 1015–1016:

Congressional legislation now touches nearly every phase of a seaman's life. It concerns itself with his personal safety, comfort and health in many ways not necessary to review here. It deals specifically with his shipping articles and the payment to him of his wages. It insures generally a partial payment to him of his wages at each port where his vessel loads or delivers cargo. It insures the payment to him of the balance of those wages upon completion of his voyage or shortly after his discharge. It deals explicitly with the final payment of wages. *It describes "forfeitures" which lawfully may be deducted from a seaman's wages* "for the benefit of the master or owner by whom the wages are payable." These provisions for the return of wages to the employer are remedial, rather than penal, in their nature (emphasis added) (footnotes omitted).

In a footnote to the cited language the court sets out Title 46 U.S.C.A. § 701 in its entirety. (786 n. 8, 72 S.Ct. 1011).

The court then states:

In keeping with the spirit of such legislation and the need for clear rules governing the computation of the balance due each seaman upon his discharge, it is reasonable to hold that only such deductions and set-offs for derelictions in the performance of his duties shall be allowed against his wages as are recognized in the statutes. Other claims against him may be valid but their collection must be

sought through other means. (footnote omitted).

The court then concluded that the loss occasioned by the seaman's knife assault on another seaman did not constitute a willful disobedience to a lawful command or any other provision allowing the shipowner to deduct by forfeiture a part of the seaman's pay.

██ I find it impossible to interpret *Isbrandtsen* in any other way than that if there is proper reason for a forfeiture under Title 46 U.S.C.A. § 701, such forfeiture may be enforced by the master deducting the sum from the seaman's pay at the time the seaman receives his final pay. In doing so, the shipowner runs the risk that if it did not have the right to do so it would be subject to double wage penalties. To hold, as plaintiff contends, that he should be paid in full, and that the shipowner would then have to bring a separate action in federal district court against the seaman to recover the forfeiture, would for all practical purposes make enforcement of a forfeiture impossible or worthless. Such procedure would compel litigation in every case even though, in most instances, there would be no dispute as to the propriety of the forfeiture. As I interpret Title 46 U.S.C.A. § 701, court action is necessary only in the event that the shipmaster seeks imprisonment of the seaman after arrival in port.

Collie v. Fergusson, 281 U.S. 52, 50 S.Ct. 68, 74 L.Ed. 606 (1930), recognized that there were circumstances that morally justified refusal to pay wages and to then deduct wages. *Isbrandtsen, supra*, may have, as plaintiff contends, overruled moral justification as a "sufficient cause" defense to a claim for double penalty wages under 46 U.S.C.A. § 596. Legislative authorization to deduct wages, or at least a legal uncertainty as to such authorization is essential to constitute "sufficient cause." Nevertheless, both *Collie* and *Isbrandtsen* recognize that given statutory authorization, and thus "sufficient cause," deductions by way of pay forfeitures by the master are proper.

Shilman v. United States, 164 F.2d 649 (2nd Cir. 1947), cert. denied, 333 U.S. 837, 68 S.Ct. 608, 92 L.Ed. 1122 (1948), enumerated certain exceptions where deductions from a seaman's pay are appropriate. Plaintiff makes much of the fact that the opinion did not expressly include the forfeitures allowed under subsections "Fourth" and "Fifth." The opinion states in part:

> While it is the general rule that a seaman discharged in a foreign port is entitled to receive his wages "without any deduction whatever" of claims against him whether of his employer or of third parties, there are exceptions recognized by the maritime law and now embodied in statutes. For example . . . . (at 651).

The qualifying words "for example" makes clear that the list following was not intended to be a complete itemization of the statutory exceptions.

Chambers v. Moore McCormack Lines, 182 F.2d 747, 749 (3rd Cir. 1950), by stating that "[t]he mere fact that wages may be withheld for eight offenses listed in R.S. § 4596" (Title 46 U.S.C.A. § 701 captioned: "Various offenses; penalties"), clearly recognizes the right of the master to withhold wages under the provisions of § 701. Other cases have recognized directly or by implication the right of a master to withhold a seaman's wages for violations of § 701 provided the logging is done according to § 702.[3] Roeder v. Alcoa Steamship Co., *supra*; Ventiades v. C. J. Thibodeaux & Co., 295 F.Supp. 135 (S.D.Tex.1968); Schwark v. S.S. Rio Macareo, 249 F.Supp. 375 (E.D.La.1966).

## CONCLUSIONS OF LAW

1. The court has jurisdiction of the parties and the subject matter.

---

3. § 702 appears to have been complied with, and plaintiff has not indicated any technical deficiency.

2.   Plaintiff willfully disobeyed lawful commands at sea on March 13, 1969, and March 14, 1969.

3.   Plaintiff on March 14, 1969, was guilty of continued willful neglect of duty at sea.

4.   Plaintiff violated Title 46 U.S.C.A. § 701 subsection "Fifth."

5.   Plaintiff was properly logged for a forfeiture of six days' pay.

6.   The forfeiture of pay and the logging thereof was done in accordance with Title 46 U.S.C.A. § 702.

7.   The six days' pay forfeiture was lawfully deducted from plaintiff's pay when he received his final pay on May 26, 1969.

8.   Plaintiff is entitled to no additional pay, nor to any "double penalty wages" under Title 46 U.S.C.A. § 596.