# United States Court of Appeals
## For the First Circuit

No. 21-1177

ROBERT R. CUSHING, individually and in his capacity as the
Minority Leader of the N.H. House of Representatives, DAVID
COTE; KATHERINE D. ROGERS; KENDALL SNOW; PAUL BERCH; DIANE
LANGLEY; CHARLOTTE DILORENZO; N.H. DEMOCRATIC PARTY,

Plaintiffs, Appellants,

v.

SHERMAN PACKARD, in his official capacity as Speaker of the
House for the N.H. House of Representatives,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Landya B. McCafferty, U.S. District Judge]

Before

Thompson and Kayatta, Circuit Judges,
and Woodlock,* District Judge.

Israel F. Piedra, with whom Welts, White & Fontaine, PC,
William E. Christie, S. Amy Spencer, and Shaheen & Gordon, P.A.,
were on brief, for appellants.
Samuel R. V. Garland, Assistant Attorney General, with whom
Anthony J. Galdieri, Senior Assistant Attorney General, and
Jennifer S. Ramsey, Assistant Attorney General, were on brief, for
appellee.

---

* Of the District of Massachusetts, sitting by designation.

April 8, 2021

**KAYATTA, <u>Circuit Judge</u>**. This expedited appeal arises out of a decision by the Speaker of the New Hampshire House of Representatives to enforce a House rule precluding any representative from participating in proceedings involving the full House -- including voting on House matters -- other than in person. Plaintiffs include seven members of the House who claim to suffer from medical conditions that make them especially vulnerable to the highly contagious novel coronavirus ("COVID-19"). Plaintiffs contend that Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, require the Speaker to allow them to participate remotely. In denying plaintiffs' motion for a preliminary injunction, the district court ruled that the doctrine of legislative immunity bars the relief sought. On plaintiffs' appeal, we now vacate that denial and remand for further proceedings consistent with this opinion. Our reasoning follows.

## I.

Plaintiffs, elected members of the New Hampshire House of Representatives, suffer from serious medical conditions and/or disabilities that they allege render them particularly vulnerable to serious illness or death, should they contract COVID-19.[1] The

---

[1] Plaintiffs, all of whom are over age sixty, have various conditions and disabilities, including Stage 4 prostate cancer;

- 3 -

risk of contracting COVID-19 is highest in heavily trafficked public locations, particularly indoors. Plaintiffs brought their suit in February of this year, at which point New Hampshire had experienced 70,505 confirmed cases of COVID-19, resulting in 1,130 deaths.

The House has 400 members. In a typical year, those 400 members would gather in person for approximately twenty full sessions. In September 2020, the House passed a motion requesting that the Supreme Court of New Hampshire declare whether holding a House session remotely, either wholly or in part, would violate the New Hampshire Constitution. The Court answered that question in the negative in November 2020, allowing for the possibility of remote sessions. Opinion of the Justs., No. 2020-0414, 2020 WL 6750797, at *1 (N.H. Nov. 17, 2020).

House leadership has researched various methods to implement remote participation in full sessions since at least the summer of 2020. Since March 2020, the House has met five times in full session, each time in person. Locations for the full sessions have included the Whittemore Center at the University of New

---

compromised or suppressed immune systems; cardiac problems; Type 2 Diabetes; Guillain-Barré Syndrome; kidney disease; degenerative joint disease; asthma and other issues affecting lung capacity and function; and advanced age. At least one plaintiff lives in a communal facility that restricts residents from participating in events involving groups larger than ten individuals, even when outside the community.

- 4 -

Hampshire, an athletic field at UNH, and a parking lot -- with Representatives in their cars -- at UNH. In contrast, a number of committee meetings and full caucus meetings were conducted remotely via videoconferencing technology in 2020, with up to 200 people participating in some meetings.

The House is constitutionally mandated to meet on the first Wednesday in December for Organization Day. House leadership, comprised of Republican party members, decided to hold Organization Day outside on an athletic field on December 2, 2020. The prior day, Republican leadership revealed that an unspecified number of House Republicans had tested positive for COVID-19 after an indoor party caucus. Despite this potential exposure, at least sixty Representatives refused to wear face masks at Organization Day, where Representative Richard Hinch was elected Speaker. One week later, Speaker Hinch died of COVID-19. The second-ranking member in the House, Speaker Pro Tem Kim Rice, also contracted COVID-19. Defendant Packard became Acting Speaker at that time and was formally elected as Speaker on January 6, 2021.

In the New Hampshire House, if a given procedure is not governed by a constitutional provision, another House rule, or custom, usage, and precedent, the procedure shall be derived from the 2020 edition of Mason's Manual of Legislative Procedure. Rule 786 of that manual provides that "[a]bsent specific authorization by the constitution or adopted rules of the body,

remote participation in floor sessions by members of the legislative body is prohibited."

Since the COVID-19 pandemic began, House members have twice attempted to amend the House rules to permit remote participation at House sessions. One proposal involved allowing the Speaker, upon a member's request, to permit remote participation in committee meetings and legislative sessions; the other proposal involved allowing virtual meetings of the full House. The House narrowly rejected both proposals.

Following the announcement that the January 2021 session would take place in person in a parking lot, each plaintiff submitted a written request to the Speaker that he or she be allowed to participate remotely in House sessions. The Speaker did not grant any member's request for remote participation. Nor did the Speaker grant remote participation requests made after he announced that the House would meet inside for the February 2021 session. Further sessions are expected between now and the end of June.

Plaintiffs then filed this action, alleging violations of the ADA and Rehabilitation Act. Plaintiffs' complaint also pled claims under the Fourteenth Amendment to the United States Constitution and under the New Hampshire Constitution. On appeal, however, plaintiffs train their attention on their federal statutory claims, eschewing any argument that either the

Fourteenth Amendment itself or New Hampshire law provide a sufficient basis for setting aside the judgment of the district court.

## II.

The district court found that the doctrine of legislative immunity shielded the Speaker from having to comply with the ADA and/or Section 504. Cushing v. Packard, Civil No. 21-cv-147-LM, 2021 WL 681638, at *6-7 (D.N.H. Feb. 22, 2021). In so doing, the district court relied heavily on our opinion in National Association of Social Workers v. Harwood, 69 F.3d 622 (1st Cir. 1995). There, we considered a state legislative rule barring private lobbyists from the floor of the Rhode Island House of Representatives while that House was in session. Id. at 624-25. In resolving the question presented in Harwood, we held that "[w]here, as here, a legislative body adopts a rule, not invidiously discriminatory on its face, that bears upon its conduct of frankly legislative business, we think that the doctrine of legislative immunity must protect legislators and legislative aides who do no more than carry out the will of the body by enforcing the rule as a part of their official duties." Id. at 631 (internal citation omitted). We further observed that "[a] rule that colors the very conditions under which legislators engage in formal debate is indubitably part and parcel of the legislative process." Id. at 632 (citations omitted). Because the "regulation

of admission to the House floor comprise[d] 'an integral part of the deliberative and communicative processes by which Members participate in . . . House proceedings,'" we concluded that "the doctrine of legislative immunity pertain[ed]" to the challenged rule.  Id. at 632 (quoting Gravel v. United States, 408 U.S. 606, 625 (1972)).

Speaker Packard, the defendant in the instant action, says this case is just the same as Harwood.  Not quite.  Harwood would be more analogous to the case now before us if the legislature in Harwood had barred lobbyists in wheelchairs from having access to the House.  Such a case would present an issue not addressed at all in Harwood:  Whether either Title II of the ADA or Section 504 of the Rehabilitation Act abrogates the immunity relied upon in Harwood.[2]  To that issue -- apparently a matter of first impression -- we now turn our attention.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."[3]  42 U.S.C.

_____

[2] Plaintiffs also argue at length that legislative immunity does not apply at all because this suit is really an action against the state, not against a legislator.  Because we find that legislative immunity does not apply, we need not reach this issue.

[3] The parties have not made arguments regarding whether plaintiffs are individuals with disabilities as defined under the

§ 12132.  The ADA defines "public entity" to include "any State or local government" or "any . . . instrumentality of a State or States or local government."  Id. § 12131(1)(A)-(B).  The ADA further provides that Congress's imposition of obligations on state governments under Title II may trump even Eleventh Amendment immunity.  See id. § 12202 ("A State shall not be immune under the [E]leventh [A]mendment . . . from an action in [a] Federal or State court of competent jurisdiction for a violation of this chapter."); Tennessee v. Lane, 541 U.S. 509, 533-34 (2004) (holding that in providing prophylactic relief in the context of a "fundamental right of access to [state] courts," Title II of the ADA "constitutes a valid exercise of Congress's § 5 authority to enforce the guarantees of the Fourteenth Amendment" and abrogates the states' Eleventh Amendment sovereign immunity).

Similarly, Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving [f]ederal" funds.  29 U.S.C. § 794(a); see also Ruskai v. Pistole, 775 F.3d 61, 77 (1st Cir. 2014).  The term "[p]rogram or activity" includes "all of the operations of" "[an]

_____

ADA and Rehabilitation Act.  We, likewise, do not address that question.

- 9 -

instrumentality of a State or of a local government" and of "each . . . State or local government entity[] to which [federal] assistance is extended." 29 U.S.C. § 794(b)(1)(A)-(B). Section 504 "requires that a public entity make 'reasonable modifications' to existing practices . . . to 'accommodate' disabled persons." Doucette v. Georgetown Pub. Sch., 936 F.3d 16, 23 (1st Cir. 2019) (quoting Alexander v. Choate, 469 U.S. 287, 300 (1985)). Under the Rehabilitation Act, states waive immunity by receiving funds from a federal program. See 29 U.S.C. § 794(a)-(b); 42 U.S.C. § 2000d-7(a)(1) ("A State shall not be immune under the Eleventh Amendment . . . from suit in Federal court for a violation of [S]ection 504 of the Rehabilitation Act of 1973 [29 U.S.C. § 794] . . . ."); Lane v. Pena, 518 U.S. 187, 200 (1996) (describing 42 U.S.C. § 2000d-7 as "an unambiguous waiver of the States' Eleventh Amendment immunity"); Nieves-Márquez v. Puerto Rico, 353 F.3d 108, 129 (1st Cir. 2003) ("Congress's intent to require waiver [under the Rehabilitation Act] is clear . . . . The Commonwealth, by accepting federal funds, has waived its immunity.").

The Speaker contends that nothing in the ADA or the Rehabilitation Act abrogates legislative immunity as applied in Harwood. The Speaker reasons that as a common-law doctrine, see Sup. Ct. of Va. v. Consumers Union of U.S., Inc., 446 U.S. 719, 732 (1980), legislative immunity survives federal legislation,

- 10 -

unless Congress "speak[s] directly" to the matter of abrogating the doctrine, citing United States v. Texas, 507 U.S. 529, 534 (1993) (quoting Mobil Oil Corp. v. Higginbotham, 436 U.S. 618, 625 (1978)). See also id. ("[S]tatutes which invade the common law . . . are to be read with a presumption favoring the retention of long-established and familiar principles, except when a statutory purpose to the contrary is evident." (quoting Isbrandtsen Co. v. Johnson, 343 U.S. 779, 783 (1952))). And the Speaker points to the fact that both the ADA and the Rehabilitation Act expressly abrogate or waive Eleventh Amendment sovereign immunity, see 42 U.S.C. § 12202; 42 U.S.C. § 2000d-7(a)(1), yet fail to provide any similar express reference to legislative immunity.

We read the ADA otherwise. A statute may express a congressional intent sufficient to overbear a common-law doctrine without expressly mentioning the doctrine. See Texas, 507 U.S. at 534 ("Congress need not 'affirmatively proscribe' the common-law doctrine at issue." (quoting respondents' brief)). The key question is whether the statute as a whole makes it "evident" that Congress understood its mandate to control. Id. (quoting Isbrandtsen Co., 343 U.S. at 783). In this particular instance, Congress expressly said that the requirements of the ADA apply to "any State . . . government." 42 U.S.C. § 12131(1)(A). And the Speaker unsurprisingly makes no argument that the New Hampshire

House of Representatives is not part of New Hampshire's state government.

As to the Rehabilitation Act, the mandates in that statute, too, apply to a "State . . . government."  29 U.S.C. § 794(b)(1)(A)-(B).  Moreover, the type of abrogation that occurs under the Rehabilitation Act arises from the state's own action in deciding to accept federal program funds, thereby waiving its immunity.  Such a waiver may be particularly apt in this case, given the receipt by New Hampshire's legislature of at least $190,000 in federal funds from the Coronavirus Aid, Relief, and Economic Security (CARES) Act.  These funds were provided to the legislature in order to pay for COVID-19-related expenses, such as "off-site" sessions, subscriptions for videoconferencing technology, IT equipment for remote work, and sanitation.

We do not find particularly persuasive force in the fact that the ADA expressly abrogates Eleventh Amendment immunity by name, yet fails to include a similar mention of legislative immunity.  See 42 U.S.C. § 12202.  The former is a more obvious impediment that is expressly enshrined in the Constitution.  So one can easily see why Congress might expressly mention it, while relying otherwise on the broad statement applying the statute to state governments to abrogate any other asserted bar, including legislative immunity.  Compare Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 73 (2000) (requiring Congress to "mak[e] its intention

unmistakably clear in the language of the statute" when abrogating Eleventh Amendment immunity (quoting Dellmuth v. Muth, 491 U.S. 223, 228 (1989))), with Texas, 507 U.S. at 534 (declining to require an affirmative proscription for abrogation of common-law doctrines when Congress's intent is evident).[4]

This is not to say that the comity concerns behind legislative immunity are of no relevance here. Under both the ADA and the Rehabilitation Act, the decision whether to require an accommodation must balance the benefits of the accommodation against the legitimate interests of the affected entity. See Clackamas Gastroenterology Assocs., P. C. v. Wells, 538 U.S. 440, 446-47 (2003) (cautioning that courts construing the ADA must weigh its remedial purpose against certain "countervailing considerations," including exceptions made by Congress); City of Boerne v. Flores, 521 U.S. 507, 533 (1997) ("Where, however, a congressional enactment pervasively prohibits constitutional state action in an effort to remedy or to prevent unconstitutional state action, limitations [on the enactment] tend to ensure Congress's means are proportionate to ends legitimate under § 5."); Wynne v. Tufts Univ. Sch. of Med., 932 F.2d 19, 24-25 (1st Cir. 1991) (requiring, under the Rehabilitation Act, "reasonable accommodations," which it distinguished from "substantial" and

---

[4] The Speaker points to no other relevant difference between the two types of immunity that should affect this analysis.

"fundamental" changes (quoting Choate, 469 U.S. at 300 n.20)); cf. Nev. Dep't of Hum. Res. v. Hibbs, 538 U.S. 721, 738, 740 (2003) (finding "significant the many other limitations that Congress placed on the scope of" the statute at issue and finding that statute "congruent and proportional to its remedial object"). We reasonably can expect that a federal court would give considered weight to the views of a state legislature when considering the reasonableness of any proposed accommodation affecting the conduct of that legislature. See, e.g., Harwood, 69 F.3d at 630-32, 634-35.

### III.

In ruling on the plaintiffs' request for preliminary injunctive relief, the district court concluded that legislative immunity precluded enforcement of the ADA and the Rehabilitation Act. Consequently, the record lacks any findings concerning whether the plaintiffs are persons with disabilities within the meaning of the ADA or the Rehabilitation Act, whether there has been any violation of either act, and, if so, what remedy or remedies should be provided. We therefore vacate the order of the district court and remand to the district court with instructions to consider plaintiffs' substantive claims. The district court should also determine whether -- and to what extent -- changing circumstances may moot the plaintiffs' claims.