Helen FROST, et al., Plaintiffs,

v.

William PERRY, Secretary of the United States Department of Defense; et al., Defendants.

No. CV–S–94–714–PMP (RLH).

United States District Court, D. Nevada.

May 4, 1995.

Jonathan Turley, Washington, DC, for plaintiffs.

Richard Sarver, Russell Young, U.S. Dept. of Justice, Environmental Defense Section, Washington, DC, for defendants.

## ORDER

PRO, District Judge.

Before the Court is a Motion to Compel (# 25) filed by Plaintiffs on February 9,

1995.[1]  Defendants filed an Opposition (# 29) on February 27, 1995, to which Plaintiffs Replied (# 36) on March 20, 1995.  After a hearing held on March 24, 1995, the Court entered an Order (# 40) requiring additional briefing on some of the relevant issues.  Accordingly, Defendants filed a Supplemental Reply (# 43) on April 7, 1995, and Plaintiffs filed a Sur–Rebuttal (# 49) on April 14, 1995.

## I.  Background

This action is brought pursuant to Section 7002 of the Resource Conservation and Recovery Act (hereinafter "RCRA" or "the Act"), 42 U.S.C. § 6972.  Plaintiffs have asserted claims against military and intelligence figures of the United States government alleging violations of RCRA in the storage, treatment, and disposal of hazardous waste at a classified facility operated by the United States Air Force and referred to for purposes of this Order as "the operating location near Groom Lake."  Plaintiffs seek declaratory and injunctive relief, civil penalties, attorney's fees and costs.[2]

On November 16, 1994, Plaintiffs' counsel sent Government Counsel a letter requesting information on the subject facility, "specifically the proper name used internally for this facility and its specific location."  *See* Letter from Professor Jonathan Turley, Environmental Crimes Project, National Law Center, George Washington University to Richard E. Sarver, Trial Attorney, United States Department of Justice, Environmental Defense Section (Nov. 16, 1994), attached as Ex. "A" to Plaintiffs' Memorandum of Points and Authorities in Support of Plaintiffs' Motion to Compel Defendants' Answer (# 25).  In response to Plaintiffs' discovery request seeking the names of the classified facility, the Government refused to provide the requested information, but indicated a willingness to stipulate as follows:

> There are a variety of operating locations within the Nellis Range Complex, some of which are classified.  One of those classified operating locations is near the Groom Dry Lake Bed.  For purposes of this litigation, this operating location may be referred to as "the operating location near Groom Lake."

*See* Letter from Richard E. Sarver, Trial Attorney, United States Department of Justice, Environmental Defense Section, to Professor Jonathan Turley, Environmental Crimes Project, National Law Center, George Washington University (Nov. 30, 1994), attached as Ex. "B" to Plaintiffs' Memorandum of Points and Authorities in Support of Plaintiffs' Motion to Compel Defendants' Answer (# 25).

Apparently unwilling to accept the Government's stipulation, Plaintiffs served Defendants with a single interrogatory asking for identifying names for the classified facility.  The interrogatory read as follows:

> Provide the name(s) or designation(s) used in documents or official oral communications by officers, agents, consultants or independent contractors of the United States Department of the Air Force, the United States Department of Defense, the United States National Security Advisor's Office, the United States Environmental Protection Agency or the Nevada Division of Environmental Protection to identify "the operating location near Groom Lake."

Plaintiffs' First Interrogatory to Defendants, attached as Ex. "C" to Plaintiffs' Memorandum of Points and Authorities in Support of Plaintiffs' Motion to Compel Defendants' Answer (# 25).  The Government responded by reasserting its refusal to disclose any names

---

1.  While considering Plaintiffs' Motion to Compel, it came to the Court's attention that this Motion does not conform to Local Rule 130–1.  After examining the case file, the Court found a number of Plaintiffs' submissions fail to conform to this Local Rule.  Consequently, it would be appropriate to strike these documents from the record.  At this time such action will not be taken.  Plaintiffs are cautioned, however, that the Clerk of Court will not accept any further filings in this action, or related actions, that do not comply with the Local Rules.

2.  Plaintiffs have also brought a related action entitled *Does I–VI v. Browner,* (CV–S–94–795–PMP (RLH)), against Carol M. Browner, Administrator of the United States Environmental Protection Agency alleging that the defendants in that action have failed carry out their alleged statutory responsibilities under RCRA, including the failure to inspect and conduct inventories at the operating location near Groom Lake.

commonly used to identify the classified facility and by objecting to the Interrogatory as vague, overbroad, and unreasonably burdensome. The Government also asserted the following objection:

> Defendants further object on the ground that disclosing any additional information beyond that already provided would reveal classified information. Because this classified information concerns current national security issues, the information cannot be declassified for the foreseeable future.

Defendants' Response to Plaintiffs' Interrogatory, attached as Ex. "D" to Plaintiffs' Memorandum of Points and Authorities in Support of Plaintiffs' Motion to Compel Defendants' Answer (# 25). Faced with the Government's refusal to answer their first interrogatory, Plaintiffs move this Court to compel disclosure of the name of the operating location near Groom Lake.

While initially objecting to the Interrogatory as vague, overbroad, unreasonably burdensome, and improperly seeking disclosure of classified information, the Government, in its Opposition (# 29) to Plaintiffs' Motion to Compel, formally asserted that its refusal to respond to Plaintiffs' Interrogatory was based upon the grounds that the information sought was "privileged." *See* Defendants' Opposition (# 29), at 3. The Government's refusal was supported by a formal claim of privilege made on behalf of the United States by the Secretary of the United States Department of the Air Force, Shiela Widnall. The claim of privilege was supported by two Declarations submitted by Secretary Widnall—one classified and one unclassified. The classified Declaration was submitted to this Court for *in camera* inspection on March 23, 1995. The essence of the national security concern is expressed in detail by Secretary Widnall in the unclassified Declaration, which was filed along with Defendants' Opposition.

The relevant portions of Secretary Widnall's unclassified Declaration state as follows:

> 2. *Purpose:* This Declaration is made for the purpose of advising the court of the national security interests in and the security classification of information that may be relevant to the above captioned lawsuits. The statements made herein are based on (a) my personal consideration of the matter; (b) my personal knowledge; and (c) my evaluation of information made available to me in my official capacity. I have concluded that release of certain information relevant to these lawsuits would necessitate disclosure of properly classified information about the Air Force operating location near Groom Lake, Nevada. I am satisfied that the information described in the classified Declaration is properly classified. I have further determined that the information described in the classified Declaration, if released to the public, could reasonably be expected to cause exceptionally grave damage to the national security. It is not possible to discuss publicly the majority of information at issue without risking the very harm to the national security that protection of the information is intended to prevent.

> 3. *Security Classification:* Under Information Security Oversight Office guidance, "[c]ertain information that would otherwise be unclassified may require classification when combined or associated with other unclassified information." (32 CFR 2001.3(a)) Protection through classification is required if the combination of unclassified items of information provides an added factor that warrants protection of the information taken as a whole. This theory of classification is commonly known as the mosaic or compilation theory. The mosaic theory of classification applies to some of the information associated with the operating location near Groom Lake. Although the operating location near Groom Lake has no official name, it is sometimes referred to by the name or names of programs that have been conducted there. The names of some programs are classified; all program names are classified when they are associated with the specific location or with other classified programs. Consequently, the release of any such names would disclose classified information.

> 4. *National Security Information:* As the head of the Agency responsible for

information regarding the operating location near Groom Lake, I have determined that information that concerns this operating location and that falls into any of the following categories, is validly classified:

a. Program(s) name(s);

b. Mission(s);

c. Capabilities;

d. Military plans, weapons, or operation;

e. Intelligence sources and methods;

f. Scientific or technological matters;

g. Certain physical characteristics;

h. Budget, finance, and contracting relationships;

i. Personnel matters; and,

j. Security sensitive environmental data.

The following are examples of why certain environmental data is sensitive to the national security. Collection of information regarding the air, water, and soil is a classic foreign intelligence practice, because analysis of these samples can result in the identification of military operations and capabilities. The presence of certain chemicals or chemical compounds, either alone or in conjunction with other chemicals and compounds, can reveal military operational capabilities or the nature and scope of classified operations. Similarly, the absence of certain chemicals or chemical compounds can be used to rule out operations and capabilities. Revealing the composition of the chemical waste stream provides the same kind of exploitable information as does publishing a list of the chemicals used and consumed. Analysis of waste material can provide critical information on the makeup as well as the vulnerabilities of the material analyzed. Disclosure of such information increases the risk to the lives of United States personnel and decreases the probability of successful mission accomplishment.

\* \* \* \* \* \*

6. *Invoking Military and State Secrets Privilege:* It is my judgment, after personal consideration of the matter, that the national security information described in this Declaration and in the classified Dec-

laration, concerning activities at the U.S. Air Force operating location near Groom Lake, Nevada, constitutes military and state secrets. As a result, disclosure of this information in documentary or testimonial evidence must be barred in the interests of national security of the United States. Pursuant to the authority vested in me as Secretary of the Air Force, I hereby invoke a formal claim of military and state secrets privilege with respect to the disclosure of the national security information listed in paragraph our of this Declaration and more fully discussed in the classified Declaration, whether through documentary or testimonial evidence.

Unclassified Declaration and Claim of Military and State Secrets Privilege of Shiela E. Widnall, Secretary of the Air Force, attached as Ex. "A" to Defendants' Memorandum of Points and Authorities in Opposition to Plaintiffs' Motion to Compel an Answer to Plaintiffs' First Interrogatory (# 29) (hereinafter the "Unclassified Declaration"), at 2–5.

## II. Discussion

■ At the outset, the Court rejects Defendants' argument that Plaintiffs' first Interrogatory is either vague or overbroad. It simply requests information relating to "the operating location near Groom Lake" which was identified as such by Defendants in correspondence to counsel for Plaintiffs. *See* Exhibit "B" attached to Defendants' Opposition (# 29). Additionally, on its face, it does not appear that a response to the Interrogatory would be unduly burdensome except to the extent that burden is considered a component of Defendants' claim of military and states privilege. It is this claim of privilege by Defendants that is dispositive of Plaintiffs' Motion to Compel.

### A. *The military and state secrets privilege*

■ The military and state secrets privilege is a common law evidentiary rule that allows the Government to withhold from discovery military secrets where disclosure would be harmful to national security. *Bentzlin v. Hughes Aircraft Co.*, 833 F.Supp. 1486, 1495 (C.D.Ca.1993).

"It is now well established that the United States, by invoking its state secrets privilege, may block discovery in a lawsuit of any information that, if disclosed, would adversely affect national security." *Ellsberg v. Mitchell*, 709 F.2d 51, 56 (D.C.Cir.1983), *cert. denied*, 465 U.S. 1038, 104 S.Ct. 1316, 79 L.Ed.2d 712 (1984). Although it was unclear exactly what principles should guide a court in assessing a claim of privilege prior to the Supreme Court's decision in *United States v. Reynolds*, 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727 (1953), the existence of some such evidentiary privilege can be traced as far back as the trial of Aaron Burr for treason. Note, *The Military and State Secrets Privilege: Protection for the National Security or Immunity for the Executive?*, 91 Yale L.J. 570, 571 (1982); *see United States v. Burr*, 25 F.Cas. 30, 37 (C.C.D.Va.1807) (No. 14,692d) (Marshall, C.J.). Since *Reynolds*, however, a number of federal court decisions have discussed the privilege. As a result, some general principles providing guidance to a court in its assessment of the validity of a claim of the military and state secrets privilege have been established.

*Reynolds* established that military or state secrets are absolutely privileged from compelled disclosure in the courts. To properly invoke the privilege, "[t]here must be a formal claim of privilege, lodged by the head of the department which has control over the matter, after actual personal consideration by that officer." *Reynolds*, 345 U.S. at 7–8, 73 S.Ct. at 532 (footnotes omitted). *See also In re United States*, 872 F.2d 472, 475 (D.C.Cir.1989); *Ellsberg*, 709 F.2d at 56–57; *Halkin v. Helms*, 690 F.2d 977, 991 (D.C.Cir. 1982) (*Halkin II* ).

■ Simply meeting these formal requirements, however, does not end the inquiry. "To some degree at least, the validity of the government's assertion must be judicially assessed." *In re United States*, 872 F.2d at 475 (quoting *Molerio v. Federal Bureau of Investigation*, 749 F.2d 815, 822 (D.C.Cir. 1984)). As explained by the District of Columbia Circuit, "[t]he court must itself determine whether the circumstances are appropriate for allowing the claim." *Id.* In doing so, however, a court must recognize that the

standard of review is a narrow one, *Halkin v. Helms*, 598 F.2d 1, 9 (D.C.Cir.1978) (*Halkin I* ); *In re United States*, 872 F.2d at 475, and the "utmost deference" should be accorded executive assertions of the privilege. *Halkin I*, 598 F.2d at 9 (quoting *United States v. Nixon*, 418 U.S. 683, 710, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039 (1974)). For these reasons, the privilege will be upheld where "there is a *reasonable danger* that compulsion of the evidence will expose military matters, which, in the interest of national security, should not be divulged." *Reynolds*, 345 U.S. at 10, 73 S.Ct. at 533 (emphasis added).

Additionally, a litigant's need for the information in question will affect the level of the Court's inquiry "in satisfying itself that the occasion for invoking the privilege is appropriate." *Id.* at 11, 73 S.Ct. at 533. Conversely, the more plausible and compelling the Government's allegations of danger to national security, "the more deferential should be the judge's inquiry into the foundations and scope of the claim." *Ellsberg*, 709 F.2d at 59 (footnote omitted). It is clear, however, that once established, "even the most compelling necessity cannot overcome the claim of privilege." *Reynolds*, 345 U.S. at 11, 73 S.Ct. at 533.

In this case, Defendants claim that they cannot be compelled to disclose the information requested in Plaintiffs' first Interrogatory because that information is absolutely privileged. In response, Plaintiffs contend that Defendants cannot rely on the privilege in this case because the military and state secrets privilege has been preempted or superseded by the Presidential exemption provision of RCRA Section 6001, 42 U.S.C. § 6961. Further, Plaintiffs contend that even if Defendants may rely on the privilege, Secretary Widnall's unclassified Declaration does not support the scope of Defendants' assertion in this case.

## B. *Preemption*

■ The issue of whether the military and state secrets privilege has been preempted or superseded by the Presidential exemption provision of RCRA Section 6001, 42 U.S.C. § 6961, must be addressed before this Court can determine whether the United States is

entitled to invoke the privilege in this case. Plaintiffs maintain that in enacting Section 6001, Congress provided a mechanism whereby the President could prevent the disclosure of military and state secrets by exempting federal facilities from the compliance with RCRA. They argue that because the United States failed to exempt the operating location near Groom Lake from compliance, Defendants cannot now utilize the common law military and state secrets privilege to effectively circumvent the requirements of RCRA.

The state secrets privilege is indeed, as Plaintiffs suggest, a common law evidentiary rule. As such, when a preemption issue is raised, "the appropriate analysis in determining if federal statutory law governs a question previously the subject of federal common law is not the same as that employed in deciding if federal law preempts state law." *Milwaukee v. Illinois,* 451 U.S. 304, 316, 101 S.Ct. 1784, 1792, 68 L.Ed.2d 114 (1981) (*Milwaukee II*). In *Milwaukee II,* the Supreme Court noted that the concerns that arise when federal preemption of state law is at issue are not implicated when the question is whether federal statutory or federal common law governs. *Id.* at 316–17, 101 S.Ct. at 1792–93. In such cases, a court is to " 'start with the assumption' that it is for Congress, not federal courts, to articulate the appropriate standards to be applied as a matter of federal law," *id.* at 317, 101 S.Ct. at 1792, and "the relevant inquiry is whether the statute '[speaks] *directly* to [the] question' otherwise answered by federal common law." *County of Oneida v. Oneida Indian Nation,* 470 U.S. 226, 236–37, 105 S.Ct. 1245, 1252, 84 L.Ed.2d 169 (1985) (quoting *Milwaukee II,* 451 U.S. at 315, 101 S.Ct. at 1791) (emphasis added).

While it remains true that a court is to "start with the assumption" that it is for Congress to establish appropriate federal standards, and that to abrogate a common law principle the statute must "speak directly" to the question addressed by the common law, recently the Supreme Court also reaf-

firmed the "longstanding" principle that "[s]tatutes which invade the common law ... are to be read with the *presumption* favoring the retention of long-established and familiar principles, except when a statutory purpose to the contrary is evident." *United States v. Texas,* —— U.S. ——, ——, 113 S.Ct. 1631, 1634, 123 L.Ed.2d 245 (1993) (citing *Isbrandtsen Co. v. Johnson,* 343 U.S. 779, 783, 72 S.Ct. 1011, 1014, 96 L.Ed. 1294 (1952); *Astoria Federal Savings & Loan Assn. v. Solimino,* 501 U.S. 104, 104–10, 111 S.Ct. 2166, 2168–70, 115 L.Ed.2d 96 (1991)) (emphasis added). As explained by the Supreme Court, "[i]n such cases, Congress does not write upon a clean slate," —— U.S. at ——, 113 S.Ct. at 1634, and courts may assume "that Congress has legislated with an expectation that the [common law] principle will apply except 'when a statutory purpose to the contrary is evident.' " *Id.* at ——, 113 S.Ct. at 1635 (citation omitted).[3]

With these principles in mind, the Court now turns to Plaintiffs' preemption argument. The question before the Court is whether the statutorily prescribed procedure allowing the President to exempt federal facilities from compliance with RCRA "speak directly" to the question traditionally addressed by the military and state secrets privilege? For the following reasons, the Court finds that it does not.

Section 6001 requires federal facilities to be subject to and comply with, among other things, all Federal, State, interstate, and local requirements "respecting control and abatement of solid waste or hazardous waste disposal and management...." 42 U.S.C. § 6961(a). This section, however, also ceded to the President authority to grant exemptions for executive branch facilities "from compliance with such a requirement if he determines it to be in the paramount interest of the United States to do so." *Id.* On its face then, the statute makes clear that RCRA is to apply to federal facilities, but allows the President to exempt such facilities

---

**3.** Contrary to Plaintiffs' suggestion, this language from *United States v. Texas, supra,* is not merely dicta. In that case, the Supreme Court expressly rejected Texas's argument that the presumption favoring existing law is appropriate only with respect to state common law or federal maritime law. In doing so, the Court noted that "there is no support in our cases for the proposition that the presumption has no application to federal common law...." —— U.S. at ——, 113 S.Ct. at 1634.

from compliance with its dictates. The plain language of the statute, however, says nothing about the protection of national security information within the context of litigation, and makes absolutely no mention of the privilege.

■ Furthermore, this Court must be mindful that Congress legislates against the strong background, and relatively recent resurgence, of the military and state secrets privilege. It is a common law evidentiary privilege that protects information that may endanger national security from disclosure to the public during litigation. The application of the privilege spans all forms of litigation that may arise in federal court, not simply RCRA actions. Moreover, the privilege may be asserted by the Government even when it is not a party to the case. *In re United States*, 872 F.2d at 475. As previously observed, the existence of the privilege as part of our common law can be traced back nearly two-hundred years; it is the oldest of the governmental privileges. *See generally* 26 Charles A. Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure* 5663. At least one court has remarked that if all the privileges recognized in our courts were to be ranked, "it is quite clear that the privilege to protect state secrets must head the list." *Halkin I*, 598 F.2d at 7. In light of this established background, the Court finds it implausible that Congress, without "more explicit statutory language and legislative comment," intended to preempt or supersede a common law privilege with constitutional underpinnings. *See Fogerty v. Fantasy, Inc.*, — U.S. —, —, 114 S.Ct. 1023, 1033, 127 L.Ed.2d 455 (1994) (finding it impossible to believe that Congress intended to adopt the British Rule without more explicitly statutory language and legislative comment). Plaintiffs' preemption argument finds no support in the statutory language, RCRA's legislative history, or the existing case law. Under these circumstances, nei-

ther will this Court give Section 6001 the construction advocated by Plaintiffs.

### C. *Assertion of the Privilege in this Case*

■ The Court finds that Plaintiffs have simply failed, to demonstrate a compelling need for the particular information requested in their first Interrogatory. The Court further finds that referring to the facility as "the operating location near Groom Lake" during this litigation allows Plaintiffs to adequately designate this facility in pleadings and discovery requests in this action. No better illustration of this point exists than the fact that the very Interrogatory at issue here requested information by using this designation. While this lack of necessity is not conclusive, it certainly weighs in favor of the Government's assertion of the privilege.

Defendants have clearly satisfied the formal requirements necessary to invoke the privilege. In her unclassified Declaration, Secretary Widnall has made a formal claim of privilege after personal consideration of the matter. *Reynolds*, 345 U.S. at 7–8, 73 S.Ct. at 531–32; *see* Unclassified Declaration at 5. Secretary Widnall has flatly stated that "the operating location near Groom Lake has no official name," but that "it is sometimes referred to by the name or names of programs that have been conducted there." Unclassified Declaration at 3.[4] Secretary Widnall further states,

> The names of some programs are classified; all program names are classified when they are associated with the specific location or with other classified programs. Consequently, the release of any such names would disclose classified information.

*Id.* This reason for withholding the information sought by Plaintiffs is set forth in more detail in Secretary Widnall's classified Declaration which the Court has reviewed *in camera*. The Court finds that classified declara-

---

4. It would appear from some of the submissions and arguments presented since the inception of this case, that Plaintiffs would like the Government to acknowledge that terms such as "Area 51" or "Dreamland" are used by the Government to refer to the operating location near Groom Lake. Although the use of these names may be common amongst the general public—possibly because of the so-called "black" nature of the facility in question—Defendants' have represented to the Court that these names are not used by the Government to refer to the facility. Therefore, these names would not be responsive to Plaintiffs' interrogatory.

tion amply supports the Government's claim of privilege in this case.

IT IS THEREFORE ORDERED THAT Plaintiffs' Motion to Compel (# 25) is Denied.