# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JEFFREY WRIGHT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 2024-1339-JTL |
| | ) | |
| SLWM, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION GRANTING MOTION TO COMPEL

Date Submitted: May 19, 2025
Date Decided: June 25, 2025

Seth A. Niederman, FOX ROTHSCHILD LLP, Wilmington, Delaware; Adam Wolek, FOX ROTHSCHILD LLP, West Palm Beach, Florida; Clarissa Sullivan, FOX ROTHSCHILD LLP, Philadelphia, Pennsylvania; *Counsel for Plaintiff Jeffrey Wright.*

David S. Eagle, KLEHR HARRISON HARVEY BRAZNBURG LLP, Wilmington, Delaware; Bonita L. Stone, KATTEN MUCHIN ROSEN LLP, Chicago, Illinois; *Counsel for Defendant SLWM, LLC.*

**LASTER, V.C.**

The plaintiff served interrogatories and requests for production of documents. The defendant bobbed and weaved, relying on a host of general objections. The parties met and conferred, but made little progress. The plaintiff moved to compel. This decision grants the motion. By separate order, the court will appoint a discovery facilitator to help the parties develop and implement a reasonable process for collecting, reviewing, and producing documents.

## I.     FACTUAL BACKGROUND

The facts are drawn from the submissions made in connection with the motion to compel.[1] The following discussion does not comprise findings of fact in the post-trial sense, but represents how the record appears at this preliminary stage.

### A.     The Employment Agreements

In February 2010, Jeffrey Wright started work at Webb-Mason, Inc., a predecessor to SLWM, Inc. (the "Company"). Wright sold branded print and promotional products.

When Wright joined the Company, he signed an employment agreement containing restrictive covenants (the "2010 Agreement"). In 2022, he signed an "Employee Confidentiality, Non-Competition, Non-Solicitation and Assignment of

---

[1] Citations in the form "Mot. ¶___" refer to paragraphs in Wright's motion to compel. Citations in the form "Opp. ¶___" refer to paragraphs in the opposition to the motion to compel. Citations in the form "Compl. ¶ ___" refer to paragraphs of the operative complaint. Citations in the form "Marchetti Dec. ¶ ___" refer to paragraphs in the Declaration of Michael Marchetti. Citations to "[Filing] Ex. [Number]" refer to exhibits submitting with filings.

Work Product Agreement" (the "2022 Agreement"). In 2023, he signed an "Amendment to Employment Agreement" (the "2023 Agreement") that changed his commission schedule. In 2024, Wright signed a letter agreement that changed his title and commission schedule (the "2024 Agreement").

In the waning days of summer 2024, Wright contacted one of the Company's competitors about possible employment. In September, he spoke with the Company's CEO about his intent to resign and continue working in the industry. The next day, Wright formally resigned. In his resignation email, he stated he was "keenly aware of the Non-compete, Non-solicit, and all facets." Dkt. 44 Ex. L.

Wright asked to be released from the 2022 Agreement, and he offered to agree to restrictions to avoid competition. The Company responded that Wright remained bound by the 2010 Agreement and the 2022 Agreement. Wright countered that the 2024 Agreement superseded all prior agreements.

**B.    This Litigation**

On December 23, 2024, Wright filed this lawsuit. He seeks declaratory relief establishing that the restrictive covenants do not bind him and injunctive relief barring the Company from enforcing them. The court granted expedition and scheduled a preliminary injunction hearing.

On January 23, 2025, after briefing and argument, the court granted a preliminary injunction in Wright's favor. The preliminary injunction prevents the Company from "enforcing or attempting to enforce restrictive covenants . . . until

2

further order of the Court or the resolution of the underlying action, whichever occurs first." Dkt. 54. ¶¶ 2–3.

## C.     The Discovery Dispute

The preliminary injunction did not end the case, and the parties continue to litigate. On February 7, 2025, Wright served his First Set of Requests for Documents and First Set of Interrogatories. The deadline to respond was March 9. On March 5, the Company asked for a twenty-one-day extension. Wright granted the Company that courtesy.

On March 31, 2025, the Company served its responses. They consisted of a host of objections. The Company did not respond substantively to any of Wright's requests. The Company did not produce any documents.

On April 10, 2025, Wright sent the Company a deficiency letter. The parties met and conferred on April 15 and April 17. The Company agreed to respond to only a few requests.

Later on April 17, 2025, Wright emailed the Company a summary of his understanding of the agreements reached at the meet-and-confer session. The email highlighted the remaining deficiencies. Wright asked for a response by April 24. The Company did not meet that deadline, citing a scheduling conflict. On April 28, the Company provided its own summary of the parties' agreements and remaining issues. The two sides differed about what took place.

On May 6, 2025, Wright moved to compel. He seeks supplemental responses to his requests and interrogatories. Wright also asks for an order directing the Company to identify custodians and conduct searches.

## II.    LEGAL ANALYSIS

"[P]retrial discovery rules are to be afforded broad and liberal treatment." *Levy v. Stern*, 687 A.2d 573 (Del. 1996) (TABLE). "The scope of discovery pursuant to Court of Chancery Rule 26(b) is broad and far-reaching[.]" *Cal. Pub. Emps. Ret. Sys. v. Coulter,* 2004 WL 1238443, at *1 (Del. Ch. May 26, 2004) (cleaned up). "[T]he spirit of Rule 26(b) calls for all relevant information, however remote, to be brought out for inspection not only by the opposing party but also for the benefit of the Court[.]" *Boxer v. Husky Oil Co.*, 1981 WL 15479, at *2 (Del. Ch. Nov. 9, 1981). "Discovery is called that for a reason. It is not called hide the ball." *Twitter, Inc. v. Musk*, 2022 WL 3591142, at *1 (Del. Ch. Aug. 23, 2022) (cleaned up).

> Rule 26(b)(1) states:
>
> Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, including the existence, description, nature, custody, condition and location of any documents, electronically stored information, or tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial.

Ct. Ch. R. 26(b)(1). The burden therefore is on the objecting party to show why and how the information requested is privileged or otherwise improperly requested." *Van de Walle v. Unimation, Inc.*, 1984 WL 8270, at *2 (Del. Ch. Oct. 15, 1984).

4

For that purpose, generic and formulaic objections are insufficient.[2]

> For an objecting party to carry its burden, the objection must be specific, the party making it must explain why it applies on the facts of the case to the request being made, and if the party is providing information subject to the objection, the party must articulate how it is applying the objection to limit the information it is providing.[3]

Objections must be "plain enough and specific enough so that the Court can understand in what way the discovery is claimed to be objectionable." *Van de Walle*, 1984 WL 8270, at *2.

---

[2] *In re Oxbow Carbon LLC Unitholder Litig.*, 2017 WL 959396, at *2 (Del. Ch. Mar. 13, 2017); *accord Byte Fed., Inc. v. Lux Vending LLC,* 2024 WL 1912950, at *2 (M.D. Fla. May 1, 2024); *Weatherspoon v. 739 Iberville, LLC*, 2022 WL 824618, at *5–6 (E.D. La. Mar. 18, 2022).

[3] *Oxbow*, 2017 WL 959396, at *3; *see In re Appraisal of Dell Inc.*, C.A. No. 9322-VCL, at 14 (Del. Ch. April 10, 2014) (TRANSCRIPT) ("[I]n terms of responses and objections [to discovery requests] . . . responses and objections need to be meaningful. They need to be not obfuscatory."); *id.* ("So when you make your discovery responses, you need to actually tell the other side what you are doing."); *DuraSeal Coatings Co. v. Rose*, C.A. No. 8660-VCL (Del. Ch. Aug. 28, 2013) (TRANSCRIPT) (rejecting "objections like declining to produce documents that otherwise are publicly available or declining to produce documents that you believe to be in the other party's custody and control.").

Ample federal authorities reach the same conclusion. *See Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3d Cir. 1982) (explaining that a party's objections must "show specifically how each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive" (cleaned up)); *DL v. District of Columbia*, 251 F.R.D. 38, 43 (D.D.C. 2008) (explaining that if party's objections "are not applied with sufficient specificity to enable this Court to evaluate their merits . . . this Court will overrule [the party's] objections in their entirety"); *In re Folding Carton Antitrust Litig.*, 83 F.R.D. 260, 264 (N.D. Ill 1979) ("Objections to interrogatories must be specific and [be] supported by a detailed explanation why the interrogatories are improper."). Federal decisions can be persuasive because the Court of Chancery Rules are modeled on the Federal Rules of Civil Procedure. *See Plummer v. Sherman*, 861 A.2d 1238, 1242 (Del. 2004).

## A.      The Company's Improper Boilerplate Objections

Wright contends that the Company's responses contain boilerplate objections that make it impossible to determine what the Company will provide. Boilerplate objections are broad, generalized objections that make no effort to explain how the request is objectionable and do not state how the responding party interprets the request. Classic examples include objections that a term or request is overly broad, unduly burdensome, vague, irrelevant, or not proportionate to the needs of the case, each without specific details.

Boilerplate objections "persist despite a litany of decisions from courts . . . that such objections are improper unless based on particularized facts."[4] Besides contravening extensive case law, they violate the Court of Chancery Rules. Rule 34(b), which governs responses to document requests, requires that "the grounds and reasons for objection(s) shall be stated with specificity." Rule 33(b)(4), which governs interrogatories, requires that "[a]ll grounds for an objection to an interrogatory shall be stated with specificity."

---

[4] *Mancia v. Mayflower Textile Servs. Co.*, 253 F.R.D. 354, 358–59 (D. Md. 2008) (collecting authorities)); *accord McLeod, Alexander, Powel & Apffel, P.C. v. Quarles,* 894 F.2d 1482, 1485–86 (5th Cir.1990) (explaining that simply objecting to requests as "overly broad, burdensome, oppressive and irrelevant," without showing "specifically how each [request] is not relevant or how each question is overly broad, burdensome or oppressive" is inadequate to "voice a successful objection."); *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 188 (C.D. Cal. 2006) ("As an initial matter, general or boilerplate objections such as 'overly burdensome and harassing' are improper—especially when a party fails to submit any evidentiary declarations supporting such objections." (citations omitted)).

6

Demanding specific objections is not persnicketiness. Boilerplate objections obfuscate. Matthew L. Jarvey, *Boilerplate Discovery Objections: How They Are Used, Why They Are Wrong, and What We Can Do About Them*, 61 Drake L. Rev. 913, 918 (2013). "Boilerplate isn't just empty content; it is the enemy of content." Steven S. Gensler & Lee H. Rosenthal, *Breaking the Boilerplate Habit in Civil Discovery*, 51 Akron L. Rev. 683, 683 (2017). Boilerplate objections are unfair to the requesting party, because they fail to inform the requesting party why its request is specifically objectionable. They also force parties to expend resources unnecessarily, because the requesting party must follow up with deficiency letters and meet-and-confer sessions to find out what, if anything, the boilerplate objections mean.[5] And they waste judicial resources, because courts end up having to rule on the boilerplate objections themselves or attempt to assess the validity of responses laden with objections.[6]

Consequently, "boilerplate, generalized objections" are "inadequate and tantamount to not making any objection at all." *Oxbow*, 2017 WL 959396, at *2 (collecting authorities). Indeed, asserting boilerplate objections constitutes "prima facie evidence of a Rule 26 violation, which causes the objecting party to waive any

---

[5] *Weatherspoon*, 2022 WL 824618, at *6 ("Objections that fail to provide an appropriate factual basis make it difficult for the parties to discuss any alleged defects even informally in a discovery request or response in hope of fixing the defects. This inhibits the parties' abilities to resolve discovery disputes on their own, as intended by the Rules." (citation omitted)).

[6] *Id.* at *5 ("A judge should not have to wade through a sea of boilerplate objections only to discover that the objections did not represent the party's actual position but were merely used to make the discovery process more difficult.")

legitimate objections that they may or may not have had." *Id.* (internal quotation marks omitted); *accord Bocock v. Innovate Corp.*, 2023 WL 8453525, at *3 (Del. Ch. Dec. 6, 2023).

### 1. "To the extent that" Objections

One type of boilerplate objection is the "to the extent that" objection. That type typically begins with or contains the phrase "to the extent that" or some variant, such as "Defendant objects to the results to the extent that they fail to comply with the Court of Chancery Rules." If the objecting party does not identify *how* the objection fails to comply with the Court of Chancery rules, then the requesting party has no way to know what the responding party is asserting. *Pfizer, Inc. v. Amgen Fremont Inc.*, C.A. No. 10667-VCL, at 7, 10 (Del. Ch. July 6, 2015) (TRANSCRIPT). Objections of this type are improper because they do not provide any information about what the responding party will provide. *Lake Treasure Hldgs. Ltd. v. Foundry Hill GP LLC*, No. 6546-VCL, 22 (Del. Ch. Sept. 11, 2012) (TRANSCRIPT).

A sibling version of the "to the extent" objection starts with a list of general objections and then states that the party will produce documents or provide interrogatory responses "subject to the objections." Here again, the requesting party has no way to evaluate where the responding party is drawing the line. Objections of this type are similarly improper.[7]

---

[7] *Oxbow*, 2017 WL 959396, at *2 (noting that is "particularly evasive for a response to recite broad, generic, and formulaic objections, then purport to answer 'subject to the objections.'"); *accord Chevron Midstream Pipelines LLC v. Settoon Towing LLC*, 2015 WL 269051, at *4 (E.D. La. Jan. 21, 2015) (explaining that a "to

The Company violated these principles. The Company objects to "the Requests to the extent they seek to impose objections on SLWM greater than or different from those established by the applicable Chancery Court rules." Mot. Ex. 2 at 1. That objection is obfuscatory. It is overruled.

Next, the Company objects to requests to the extent that they seek documents subject to attorney-client privilege, work-product doctrine, or any other privilege or immunity. Objecting to producing documents subject to attorney-client privilege and work-product doctrine is legitimate, but only if the Company promptly provides a privilege log. The reference to any "other privilege or immunity" is improper. If the Company believes it has other privileges or immunities to assert, then it must say so. Otherwise the requesting party cannot know what to challenge. The objection invoking an unidentified privilege or immunity is overruled.

Next, the Company objects to producing documents to the extent the requests contain implicit or explicit characterizations of discovery materials. That objection is inscrutable. It is overruled.

---

the extent" objection "is not really an objection at all and it comes nowhere near complying with the requirement of Rule 26"); *Guzman v. Irmadan, Inc.*, 249 F.R.D. 399, 401 (S.D. Fla. 2008) ("Parties shall not recite a formulaic objection followed by an answer to the request. It has become common practice for a party to object on the basis of any of the above reasons, and then state that 'notwithstanding the above,' the party will respond to the discovery request, subject to or without waiving such objection. Such objection and answer preserves nothing, and constitutes only a waste of effort and the resources of both the parties and the court.").

Finally, the Company objects to producing discovery to the extent that Wright has greater or equal access. That is not a proper objection, because the Company does not say what it has in mind. Is the Company improperly objecting to producing emails where Wright was an addressee on the theory he must have received them? Does the Company think Wright has a cache of records somewhere? The objection is overruled.

## 2. Vagueness and Ambiguity Objections

A second type of boilerplate objection involves assertions that a term, request, or interrogatory is vague or ambiguous.[8] Often these objections dispute the way the requesting party has defined a term. A general objection to that effect is improper. Proficient English language speakers can usually discern what the request or interrogatory seeks, while also recognizing that the requester does not want to shoot themselves in the foot by artificially limiting the request in a way that could have unforeseen effects. The responding party therefore must specifically object to what is vague or ambiguous *and* explain how the responding party will interpret the request to make a good-faith effort to respond. An objection that does not do both is

---

[8] *See VeroBlue Farms USA Inc. v. Wulf*, 111 Fed. R. Serv. 3d 505 (N.D. Tex. 2021) ([A] party objecting to discovery as vague or ambiguous has the burden to show such vagueness or ambiguity); *Rogers v. Giurbino*, 288 F.R.D. 469, 487 (S.D. Cal. 2012) ("To assert that institutional safety would be compromised by answering the interrogatory, the Defendant must provide more than a vague boilerplate objection).

inadequate.[9] Objections to familiar terms or phrases with a commonly understood meaning are improper.[10]

The Company initially objected to nine requests and interrogatories as vague. The Company did not say how it was interpreting the requests and interrogatories in a good-faith effort to provide discovery. Through the meet-and-confer process, the parties resolved seven of the disputes, but that does not mean the original objections were proper. They were not.

Two vagueness objections remain. The Company objected twice to the phrase "status of the account" as vague and ambiguous. Mot. Ex 2 at 21–22. Both requests seek documents relating to the "status of the account . . . including any missed or late payments." *Id.* Read in context, the reference to the "status of the account" refers to whether the account is active, in good standing, in arrears, subject to late or missed

---

[9] *See Moreno Rivera v. DHL Glob. Forwarding*, 272 F.R.D. 50, 57 (D.P.R. 2011) (finding general objections to vagueness were themselves "vague and impermissibly overbroad").

[10] *Oxbow*, 2017 WL 959396, at *6 ("The objections to straightforward English terms are not credible."); *Pfizer Inc. v. Amgen Fremont Inc.*, C.A. No. 10667-VCL, at 16–19 (Del. Ch. July 6, 2015) (TRANSCRIPT) ("You guys don't get to say things like, 'Oh, we don't understand this word,' or 'Oh, this word is vague.' I read the [discovery] requests. . . . It is not credible and does not score you points with me to pretend that you have lost the ability to speak the English language."); *see Chesapeake Operating, Inc. v. Stratco Operating Co.*, 2009 WL 426101, at *5 (M.D. La. 2009) (finding that "the term 'operational' is not overly vague and is one commonly used in the oil and gas industry, as is evidenced by jurisprudence dealing with the industry"); *Frost v. Perry*, 161 F.R.D. 434, 487 (D. Nev. 1995) (finding phrase "the operating location near [specified lake]" was not vague); *Frontier-Kemper Constructors, Inc. v. Elk Run Coal Co.*, 246 F.R.D. 522, 531 (S.D. W. Va. 2007) (finding phrase "increased cost and time" was not vague).

payments, or otherwise impaired. If one of the Company's executives asked about the status of an account, an employee would not have asked what she meant. The employee would answer. The objections to this phrase were improper and are overruled. For reasons discussed below, the other objections to these requests are overruled as well. The Company must produce responsive documents.

Not all of the Company's objections were improper. To give credit where credit is due, the Company properly objected to Request 8, which asked for "[c]opies of all monthly commission statements for Plaintiff and Customers Serviced by Plaintiff from January 1, 2024 through December 31, 2024." Mot. Ex. 2 at 8. The Company objected to the request as vague and confusing and explained that "customers do not receive commission statements." *Id.* That is a proper objection because the Company explained what it was talking about.

### 3. Relevance Objections

A third type of boilerplate objections invokes relevance. The concept of relevance lies at the heart of discovery. Court of Chancery Rule 26 allows parties to obtain discovery regarding "any non-privileged matter that is *relevant* to any party's claim or defense." Ct. Ch. R. 26(b)(1). The standard for relevant evidence is a liberal one: The evidence need only tend to make it more or less probable that a fact of consequence to the case is true. *See* D.R.E. 401. The standard of relevance for discovery builds on that test: The requesting party need only show some possibility that the discovery will lead to relevant evidence. *See Loretto Literary & Benevolent Inst. v. Blue Diamond Coal Co.*, 1980 WL 268060, at *4 (Del. Ch. Oct. 24, 1980).

12

The Company objected to twenty-one requests and interrogatories as seeking information that is "not relevant." The Company did not explain why. Not until its response to the motion to compel did the Company offer details, asserting that requests about vendor holds, shipping delays, or customer complaints were not central to Wright's claims. The Company also argues that requests targeting account status, payment histories, or performance improvement plans sought irrelevant internal information.

The requested material is relevant. Request 1 seeks "[a]ll Documents and Communications referring to or related to Plaintiff's resignation from SLWM." That information is obviously relevant. It is the core issue in the case.

Request 2 seeks documents and communications related to "Plaintiff's employment, Plaintiff's resignation, Customers Serviced by Plaintiff, and Plaintiff's performance as a Vice President of Sales and/or Sales Account Executive from October 16, 2024 to present." That information is also relevant—and obviously so.

Requests 13–15, 20, 2–24, 27 and Interrogatory 7 seek information about Merry Maids, one of Wright's principal accounts. Wright alleges that the Company made "false and/or misleading statements to its customers and potential customers" to the effect that he was to blame for delays, and the alleged statements related to his performance with Merry Maid, one of his key customers. Compl. ¶¶ 153, 267. Documents relating to Merry Maids, including internal discussions about the relationship, the alleged performance improvement plan, and post-resignation communications are relevant; they relate to whether Wright was underperforming;

whether a performance improvement plan existed and had merit; whether the Company internally acknowledged another cause of customer dissatisfaction; whether the Company falsely told customers Wright was to blame. That information is relevant.

Requests 1–2 and 21–22 seek documents related to Wright's resignation. The Company asserts that Wright resigned voluntarily. Wright contends that the Company forced him to resign by creating a hostile and untenable work environment. Documents relating to his resignation, complaints about his performance, disciplinary actions, and customer expectations are relevant.

Requests 24–28 and Interrogatories 8–9 seek information about post-resignation communications and the status of Wright's former accounts. Wright alleges that after he resigned, the Company disparaged him to customers. He also claims the Company obstructed or undermined his customer relationships by claiming he failed at his job. Discovery into communications with customers after Wright's resignation, the account transitions, and the status of the accounts is relevant.

In short, all of the requested material maps to one or more elements of Wright's claims. The Company's relevance objections are overruled.

### 4. Burden, Overbreadth, and Proportionality Objections

Yet another species of boilerplate objections involves assertions that a term, request, or interrogatory is unduly burdensome or overly broad. Both objections relate to the concept of proportionality. Court of Chancery Rule 26 allows parties to

14

obtain relevant discovery that is "proportional to the needs of the case." Ct. Ch. R. 26(b)(1). The rule thus "expressly include[s] a requirement that discovery be proportionate to what is at stake in the litigation." *Wei v. Zoox, Inc.*, 268 A.3d 1207, 1213 (Del. Ch. 2022).

Court of Chancery Rule 26(b)(1) identifies factors for the court to consider when evaluating proportionality:

> The frequency or extent of use of the discovery methods set forth in paragraph (a) shall be limited by the Court if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the discovery sought is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Ct. Ch. R. 26(b)(1).

When a party responds to a discovery request with a proportionality objection, the party should frame its response using the Rule 26 factors. J. Douglas Grimes and Joshua D. Neighbors, *Work Up-Front For Clarity Later Objecting and Responding to Document Requests Under Amended Rule 34*, 58 No. 7 DRI For Def. 38 (2016). But the factors do not "permit the opposing party to refuse discovery simply by making a boilerplate objection that it is not proportional." Fed. R. Civ. P. 26 cmt. The responding party must state why the discovery sought is overbroad, unduly burdensome, or disproportionate and explain what it will produce in a good-faith effort to provide responsive materials. Without more, objecting that a discovery

15

request is overly broad, unduly burdensome, or disproportionate is improper.[11] Merely claiming some incremental burden from searching for additional information is also insufficient.[12] A party must explain what the additional burden entails and explain what it will do to make a good-faith effort to provide discovery that is appropriate. *See Byte Fed*, 2024 WL 1912950, at *3 (explaining that an attorney receiving a request for documents has a responsibility to interpret the request in a reasonable way).

The Company objected to twenty-one requests and interrogatories as overly broad, burdensome, and disproportionate. Each objection is rote boilerplate. The

---

[11] *Oxbow*, 2017 WL 959396, at *4 (finding it is "insufficient" to only object to a request as "excessive, overbroad, and unduly burdensome" without explaining the objection); *accord St. Paul Reinsurance Co. v. Com. Fin. Corp.*, 198 F.R.D. 508, 512 (N.D. Iowa 2000) ("In this case, the plaintiffs have failed to sustain their burden of demonstrating that the discovery sought is outside the scope of Rule 26(b)(1). Rather, they have merely asserted boilerplate objections that the discovery sought is vague, ambiguous, overbroad, unduly burdensome, etc. without specifying how each request for production is deficient and without articulating the particular harm that would accrue if they were required to respond to CFC's discovery requests. "); *Oleson v. Kmart Corp.*, 175 F.R.D 560, 565 (D. Kan. 1997) ("The objecting party must show specifically how each discovery request is burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden."); *Roesberg v. Johns-Manville Corp.*, 85 F.R.D. 292, 295–97 (E.D. Pa. 1980) (explaining that an objecting party "must show specifically how . . . each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive . . . by submitting affidavits or offering evidence revealing the nature of the burden" (internal citations omitted)).

[12] *Solow v. Aspect Res., LLC*, 2007 WL 3256944, at *1 (Del. Ch. Oct. 30, 2007) ("Merely stating, however, that searching for documents generated from 1993 to 2000 would add to some undue burden . . . does not describe with any precision or particularity does not make that search unduly burdensome.").

16

Company never said why a particular request was overbroad or what burden the request would impose.

In its response to the motion to compel, the Company submitted a declaration of Michael Marchetti, the Company's President, that provides facts about why the requests and interrogatories are burdensome. Marchetti asserts that the Company has employed more than 400 people since its formation, each with a company-issued email address, and currently employs around 237. He notes that Wright serviced thirteen customers, requiring the Company to search through the email boxes and devices of "25 or more employees" to locate communications involving those customers. For another firm, he asserts that the Company would have to review data from "at least ten (10) and potentially more." For another, he asserts that responsive material could be spread across the accounts of "approximately 130 employees" in departments such as finance, supply, and strategic sourcing.

Marchetti's declaration offers the types of factual details that the Company should have provided before the motion to compel. A response to a motion to compel is too late to provide a post hoc justification for a previously unsupported and otherwise improper objection. *E.g.*, *Lorenzano v. Sys., Inc.*, 2018 WL 3827635, at *3 (M.D. Fla. Jan. 24, 2018) ("[T]he Court will not rely on Systems' post hoc justifications for its boilerplate objections. To the extent that Systems tried to raise specific objections in its Response, the Court finds that Systems waived these objections."). Regardless, his assertions remain generalized. The Marchetti declaration also falls short because he does not offer compromises or solutions. It seeks to justify shutting

17

down discovery, rather than proposing an efficient means of providing Wright with the information he needs to litigate the case.

The Company argues that Wright's requests were overly burdensome because he did not identify custodians or provide search terms. That is not the requesting party's job. "[R]esponding parties are best situated to evaluate the procedures, methodologies, and technologies for preserving and producing their own electronically stored information." The Sedona Principles, *Best Practices, Recommendations & Principles for Addressing Electronic Document Production*, 19 Sedona Conf. J. 1, 118 (2018). "Just as a requesting party does not have a right to dictate the processes, methodologies, or technologies to be used by a responding party in fulfilling its preservation or discovery obligations …, the corollary is that a responding party has no right to demand a requesting party actively assist the responding party with evaluating and selecting the procedures, methodologies, and technologies for meeting the responding party's preservation and production obligations." *Id.* at 124. Thus, "a responding party cannot unilaterally demand the requesting party submit proposed search terms and a list of custodians against which to run the search terms, or use the requesting party's reluctance to provide search terms as a shield to defend its own inadequate search terms. " *Id.*

Under the Court of Chancery Rules, the requesting party serves document requests. The responding party bears the obligation to design and implement a reasonable process that will lead to the production of relevant evidence. The responding party has unique access to and knowledge of its own data environment,

18

and the responding party's attorneys can work with their clients. The responding party must figure out how to obtain the information covered by the requests by identifying relevant custodians, developing a collection process, and determining how to identify responsive documents (which may include using search terms or more advanced methods). Demanding that the requesting party identify custodians and propose search terms represents an improper effort by the responding party to offload their discovery obligations onto the requesting party. And if the requesting party offers up terms, the result represents the worst in "Go Fish" searching.[13]

That does not mean the requesting party cannot help. Nor does it mean that the responding party should develop its own protocol without conferring with the requesting party. Although the American legal system involves an adversarial process, discovery requires cooperation and transparency. "Candor and fair-dealing are, or should be, the hallmark of litigation and require attributes of those who resort to the judicial process. The rules of discovery demand no less." *E.I. DuPont de Nemours & Co. v. Fla. Evergreen Foliage*, 744 A.2d 457, 461 (Del. 1999). "When parties are transparent, they can cooperate to address problems without judicial

---

[13] *See Da Silva Moore v. Publicis Group & MSL Group*, 287 F.R.D. 182, 190–91 (S.D.N.Y. 2012) ("In too many cases, however, the way lawyers choose key words is the equivalent of the child's game of 'Go Fish." (citing Ralph C. Lose, *Child's Game of "Go Fish" is a Poor Model for e-Discovery Search*, Adventures in Electronic Discovery 209–10 (2011)); *see also William A. Gross Constr. Assocs., Inc. v. Am. Mfrs. Mut. Ins. Co.*, 256 F.R.D. 134, 134 (S.D.N.Y. 2009) ("This Opinion should serve as a wake-up call . . . about the need for careful thought, quality control, testing, and cooperation with opposing counsel in designing search terms or 'keywords' to be used to produce emails or other electronically stored information.").

involvement." *In re ExamWorks Gp., Inc. S'holder Appraisal Litig.*, 2018 WL 1008439, at \*6 (Del. Ch. Feb. 21, 2018). As officers of the court, "attorneys can find solutions to keep a case on track and prepare the matter for decision. Attorneys shirk their obligations to the court and make matters worse when they fail to communicate with the other side[.]" *Id.* Notably, the attorney's duty as an officer of the court always "takes precedence over the interests of the client because officers of the Court are obligated to represent these clients zealously within the bounds of both the positive law and the rules of ethics." *In re Abbott*, 925 A.2d 482, 487–88 (Del.2007) (internal quotation marks omitted).

Embarking on empirically and informationally blind negotiations over search terms will rarely be an effective way to proceed. *See WorkCo, Inc. v. Liquifi, Inc.*, 2025 WL 1168234, at \*3–4 (Del. Ch. Apr. 21, 2025). Nor do terms that generate more hits necessary result in more responsive information. *Id.*

One good way to start is by discussing the categories of information that the requesting party wants. There may be several different requests that touch on a particular category, but a shared understanding of the topic at issue can offer a superior foundation for building a discovery plan. *See id.* at \*4. With a shared understanding of the topics, a responding party can develop a search plan designed to obtain the information sought using a combination of techniques, including metadata searches, sampling, and technology assisted review. *Id.* at \*5. Searches tailored by category can often generate better results, more efficiently, than a single broad collection. *Id.* A cooperative discovery effort also requires that the producing

20

party share details about the search and culling techniques that were applied and provide related metrics, including search set volumes and test results relating to the effectiveness of the searches. *Id.* WorkCo provides a concrete example of how parties can use sampling and testing to collect documents in a cost-effective and efficient way.

The Company's objections to burdensomeness are overruled. By separate order, the court will appoint Tara Emory, an experienced discovery professional, as a discovery facilitator to help the parties design and implement a reasonable discovery protocol. That effort will include determining an appropriate time period for production, which may include different time periods for different types of information.

## B.    The Duty To Prepare A Privilege Log

The next dispute is over privilege. Under Rule 26(b)(1) "[p]arties may obtain discovery into any matter, *not privileged*, which is relevant to the subject matter involved in the pending action." Like other discovery objections, "[t]he burden of establishing that otherwise discoverable information is privileged rests 'on the party asserting the privilege.'" *Mechel Bluestone, Inc. v. James C. Justice Companies, Inc.*, 2014 WL 7011195, at * 4 (Del. Ch. Dec. 12, 2014) (collecting authorities).

> [A] bare allegation that information and documents are protected from discovery by . . . privilege is insufficient without making more information available . . . .. It is incumbent on one asserting the privilege to make a proper showing that each of the criteria [underlying the privilege] exist[s] . . . .. A proper claim of privilege requires a specific

designation and description of the documents within its scope as well as precise and certain reasons for preserving their confidentiality.[14]

The party asserting the privilege must provide "sufficient facts as to bring the identified and described document within the narrow confines of privilege." *Mechel Bluestone*, 2014 WL 7011195, at * 4 (quoting *Int'l Paper*, 63 F.R.D. at 94); *accord Thermo Fisher Sci. PSG Corp. v. Arranta Bio MA, LLC*, 2023 WL 300150, at *2 (Del. Ch. Jan. 18, 2023) ("[The party asserting privilege] must provide precise and certain reasons why privilege applies for each document over which privilege is claimed." (cleaned up)).

To meet its burden, a party asserting privilege typically prepares a privilege log. *Mechel Bluestone*, 2014 WL 7011195, at *4. At a minimum, a privilege log must identify

> (a) the date of the communication, (b) the parties to the communication (including their names and corporate positions), (c) the names of the attorneys who were parties to the communication, and (d) [a description of] the subject of the communication sufficient to show why the privilege applies, as well as [the issue to which] it pertains.... With regard to this last requirement, the privilege log must show sufficient facts as to bring the identified and described document within the narrow confines of the privilege.

*Id.* "The requirements for preparing a satisfactory log under Delaware law are 'readily established and easily available.'" *Thermo Fisher*, 2023 WL 300150, at *2

---

[14] *Int'l Paper Co. v. Fibreboard Corp.*, 63 F.R.D. 88, 93–94 (D. Del. 1974) (internal citations omitted); *accord Sokol Hldgs., Inc. v. Dorsey & Whitney, LLP*, 2009 WL 2501542, at *8 (Del. Ch. Aug. 5, 2009); *Deutsch v. Cogan*, 580 A.2d 100, 107 (Del. Ch. 1990); *Reese v. Klair*, 1985 WL 21127, at *5 (Del. Ch. Feb. 20, 1985).

(quoting *Klig v. Deloitte LLP*, 2010 WL 3489735, at *5 (Del. Ch. Sept. 7, 2010) (TRANSCRIPT)).

The Company argues it does not need to produce a privilege log because "[p]laintiff has yet to meet the threshold requirement of showing his requests are reasonable and SLWM is required to produce documents and information." Opp. at 7. For the reasons stated above, the Company's objections are largely boilerplate and overruled. The Company needs to start working on a log so that it can be produced promptly.

### III. CONCLUSION

Wright's motion to compel is granted. Because the Company's objections were not substantially justified, Wright is entitled to the expenses (including attorneys' fees) incurred pursuing the motion. That natural consequence forces the Company to internalize the burdens that its improper objections created. If the parties cannot agree on an amount, Wright will file a short motion to quantify the amount of the fee award, supported by a Rule 88 affidavit.